NOTICE

Decision filed 11/15/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180358-U

NO. 5-18-0358

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 17-CF-316 |
| | ) | |
| BRYAN D. WISE II, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant triggered the need for a *Krankel* hearing by his verbal assertion during a posttrial motion hearing that trial counsel provided ineffective assistance. Where the trial court conducted an adequate inquiry into the defendant's claims of ineffective assistance of counsel, we affirm. Where the defendant's claims of ineffective assistance were without merit or involved matters of trial strategy, the trial court's decision not to appoint separate counsel was not manifestly erroneous.

¶ 2    In this direct appeal, the defendant, Bryan D. Wise II, appeals from his conviction for aggravated battery with a firearm and his prison sentence of 23 years in the Illinois Department of Corrections plus 3 years of mandatory supervised release. The defendant alleges that the trial court failed to conduct a proper inquiry into his claims of ineffective assistance of counsel. The defendant also claims that the trial court erred in not appointing separate counsel to pursue his

1

claims of ineffective assistance and erred in denying his motion for a new trial on that basis. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On July 6, 2017, the State charged the defendant with aggravated battery with a firearm in violation of section 12-3.05(e)(1) of the Criminal Code of 2012, a Class X felony. 720 ILCS 5/12-3.05(e)(1) (West 2016). The State alleged that the defendant discharged a firearm on July 4, 2017, that caused bodily injury to a man named Arthur Morgan.

¶ 5      Counsel was appointed to represent the defendant on September 28, 2017. The defendant's first public defender was Margaret Degen. Degen filed a motion to withdraw on October 27, 2017, after she discovered that she had a conflict of interest.

¶ 6      On November 1, 2017, attorney Celeste A. Korando entered her appearance on behalf of the defendant. Discovery continued.

¶ 7      On February 27, 2018, the defendant asked the trial court to remove Korando as his attorney. The trial court asked the defendant for his reasoning. The defendant stated:

> "Because I feel that she ain't got [my] best interest in my situation that I'm going through, getting ready for trial. I feel that she's not trying to put no effort into defending me to the best of her capability. So in my understanding, I really would try to get another counsel, which I've talked to a couple of my people and they said they're either going to try to put some money together, or if you'll appoint me one, I'm still going to try to get a lawyer either way, but I feel like Ms. Korando isn't trying to do her best. I don't know if it's because she got other people, but I don't feel comfortable going to trial with her because my life is on the line since I'm facing six to thirty."

In response, Korando informed the court that she believed there was an irretrievable breakdown in the attorney-client relationship. She stated that the defendant had stopped communicating with her. The trial court denied the defendant's request partly due to the closeness to trial. The trial court informed the defendant that he could go ahead and hire private counsel, but at that time, Korando would remain his attorney.

2

¶ 8    On March 1, 2018, attorney Korando filed a written motion to withdraw citing a conflict of interest. The conflict stemmed from the defendant's refusal to speak with her at the jail on February 27, 2018, and on March 1, 2018. Korando stated that she would not be able to properly prepare a defense without the defendant's participation. The trial court had the defendant brought over to the courthouse, and the motion was heard the same date.

¶ 9    At the hearing on Korando's motion to withdraw, the trial court spoke to the defendant as follows:

> "[T]here are difficult conversations between an attorney and client, but they need to be had. Conversations, communication back and forth needs to take place, I'm certain you understand that, no matter who your counsel is. Sometimes there's good news, bad news, all types of news that comes back and forth from both the client to an attorney. Part of the job is to explain, whether it's difficult or not, what your options are based upon charges in the case."

In response, the defendant stated:

> "[B]ecause I feel that she—only time she ever came to see me was the day of I had court. Every time she came to see me was the day I had court. It wasn't like within a week so we can sit down and discuss. So she ain't really started doing that until Monday asking me was I ready to go to trial. I feel that since she knew ahead of time that I kept on telling her I was going to trial, I think she should have made more effort to come see me even though I know she has other clients that she defending, but knowing that I was going to trial and knowing the circumstances of my case, I feel that she should have at least attempted to come see me more so we can prepare for trial.
>
>    And then when we was talking, she declared that since the victim was coming to the court that she—that if I go to trial, that she 100 percent guaranteed I was going to get convicted. I feel that even though I know the circumstances of that, she shouldn't have to tell me that she guaranty I'm going to get convicted.
>
> * * *
>
>    But I feel that I have to [get into the details of his communication with Korando] for the simple fact that it's stuff that she's withholding, and that's the reason why I fired her. When she told me that, I got up told her that you're fired. That was Tuesday. And I wrote you a letter[1] that same day that you should be getting soon.

---

[1]We do not know whether the trial court received the letter referenced by the defendant in his testimony. The record on appeal does not contain a copy of any letter from the defendant to the court.

3

*  *  *

I just don't feel comfortable going into trial with Ms. Korando because of those conversations that we had, and I feel, like I said yesterday, that she doesn't have my best interest to me, to my opinion, to my satisfaction as being my lawyer.

*  *  *

So you're going to force me to go to trial with an attorney that I'm telling you even though we having difficulty and seeing eye to eye? So you're basically forcing me to go to trial with a lawyer that I'm telling you that I want to fire."

The trial court explained to the defendant that he was not forcing him to go to trial, and that decision remained his to make. The court reiterated that the defendant was entitled to appointed counsel, and that attorney Korando would continue to be his attorney at trial.

¶ 10    The case proceeded to a jury trial on March 5, 2018. The defendant was represented by attorney Korando at trial.

¶ 11    The first witness called by the State was the victim, Arthur L. Morgan Jr. He stated that everyone called him by his middle name, Louis. He testified that he lived in Nashville, Tennessee, and had been employed by United Parcel Service for over 30 years. Morgan testified that he was originally from Carbondale and his mother still lived there. Morgan is the defendant's uncle.

¶ 12    The week before the incident, Morgan came to Carbondale for a funeral and to visit his mother. While in town, Morgan also saw the defendant, his nephew, who stopped by Morgan's mother's house to ask for money. Morgan testified that this was not unusual, and that he had given the defendant money on more than five other occasions. At that time, Morgan gave the defendant $70.

¶ 13    During the following week, the defendant and Morgan spoke once by telephone and continued the conversation via text messages. The subject of these communications was a

4

vehicle owned by Morgan's mother. The defendant wanted this vehicle. Morgan agreed with the defendant that his mother, who was 82 years old, should no longer be driving her vehicle, but he testified that he told the defendant that the decision to keep or sell the vehicle was ultimately up to her. The defendant also wanted Morgan's mother to cosign a vehicle loan. Morgan's mother had indicated that she would not cosign on a vehicle loan for the defendant. As the conversations went back and forth, the defendant became antagonistic and threatening. Specifically, the defendant said that he would kill Morgan and Morgan's mother the next time he saw them.

¶ 14    Morgan came back to Carbondale for the Independence Day weekend. On July 4, 2017, the defendant called Morgan. Morgan was at his friend's house, and they were enjoying the holiday and drinking beer. Morgan testified that he was not intoxicated. While at his friend's house, the defendant began texting Morgan to find out where he was. This was upsetting to Morgan, and he left his friend's house at about 9 p.m. Morgan then went to visit with his cousin, and then returned to his friend's house, before heading back to his mother's house. When he arrived at his mother's house, he pulled his pickup truck straight into the driveway. The hood of his truck faced the house, while the bed of the truck faced the street. Morgan testified that his mother would not let him smoke in the house, and so he sat on his tailgate to smoke a cigarette. Then he heard the defendant call him by name—"Uncle Louis." Morgan testified that he recognized his nephew's voice as he had known him his entire life. Morgan testified that the defendant's voice sounded like the defendant was behind Morgan—closer to the front of his truck. When Morgan turned around, the defendant started to shoot a gun. He testified that he knew the sound came from a gun because he received firearms training in the three years he served in the military. Morgan testified that the defendant was shooting at him and, in fact, hit him. Morgan also testified that the streetlights illuminated the area sufficiently that he was able

5

to identify that the shooter was the defendant. The defendant ran on foot down the street to the south of Morgan's mother's home.

¶ 15    After the defendant fled the scene, Morgan closed his mother's garage, got into his truck, and drove back to his friend's house. An individual who was at his friend's house drove Morgan to Carbondale Memorial Hospital. He was later transferred to Barnes-Jewish Hospital in St. Louis. Morgan testified that the bullet entered his left clavicle and exited close to his spinal column at shoulder level. In addition, the bullet severed an artery that caused the loss of blood flow to Morgan's left arm. While at Barnes-Jewish Hospital, Morgan had a surgical procedure to repair the blood flow issue. Morgan testified that he has permanent scarring on his left arm, left clavicle, and back. Due to his hospitalization and injuries, Morgan missed approximately three months of work.

¶ 16    In addition to his bodily injuries, when Morgan retrieved his truck, he found that there were two areas of damage on the truck. Morgan testified that he believed that the damage resulted from bullets striking his truck.

¶ 17    On cross-examination, Morgan testified that when the shooting began, he jumped off of the tailgate and attempted to take cover on the driver's side of his truck. He confirmed that he saw the defendant's face but could not remember what clothing he was wearing. He did not see the gun but did see flashes when the gun was being fired. He testified that he did not think that the defendant was serious about the texted death threats, and that was why he did not notify the police after he received the messages.

¶ 18    Rebecca Mooney testified next. She had been employed by the Carbondale Police Department for over 14 years. At the time of the incident, Mooney was a crime scene specialist. As a crime scene specialist, Mooney reports to crime scenes to gather, and then process,

evidence. She testified that she had collected evidence at more than 75 shooting scenes. The focus of her work in this case was Morgan's pickup truck. She described the damage to his truck and provided her opinion that the damaged areas resulted from bullet strikes.

¶ 19    The State also called Jennifer Brooke Lam to testify. Lam had worked for 14 years for the Carbondale Police Department. On the date of the incident, Lam was a detective. After the patrol officers finished their work, and evidence was collected, the case was turned over to her. Lam went to Barnes-Jewish Hospital on July 6, 2017, to interview Morgan. She obtained Morgan's permission to go through his cell phone. Lam located the text messages allegedly sent by the defendant and photographed them for use as evidence. She sent a search warrant to Verizon Wireless to ascertain who was associated with the phone number that originated the text messages to Morgan. Based upon the information Lam received from Verizon Wireless, she testified that the defendant's phone number sent the text messages at issue. Verizon Wireless was also able to produce the content of the text messages. Lam testified that the text content Verizon Wireless sent to her was consistent with the content of the text messages received by, and she retrieved from, Morgan's phone.

¶ 20    At the close of the State's evidence, the defendant's attorney filed a motion for a directed verdict. She argued that there was no physical evidence in this case, that there was no evidence that Morgan's injuries were caused by a gun, and that there was no evidence that the defendant had fired a gun. The State argued that the evidence was amply presented in Morgan's testimony. The trial court denied the defendant's motion.

¶ 21    The defendant opted not to testify in his own defense. The defense presented no evidence.

¶ 22    In closing, defense counsel focused on the State's failure to meet its burden of proof. After closing arguments, the jury deliberated and returned with a verdict finding the defendant guilty of the crime.

¶ 23    On April 6, 2018, defense counsel filed a motion for a new trial and a motion to withdraw as the defendant's counsel. In the motion for a new trial, the defendant alleged that his counsel was ineffective during trial. Attorney Korando's motion to withdraw was based upon the defendant's claim that she was ineffective in her representation of him throughout trial.

¶ 24    On June 13, 2018, the trial court held a hearing on the motions. The trial court noted that, at that time, the defendant had not formally lodged an ineffective assistance of counsel claim. The court asked the defendant to explain why he believed that the court should grant Korando's motion to withdraw. The defendant stated:

> "I want to have mercy. I just feel that when, when it was time to go to trial, she basically, it was like she wanted me to—like, she wanted me to always, like, take a plea or an open plea. And I feel that when I told her that I got saying what I was trying to do whenever I feel that she just, and words just like basic through my case. You know what I'm saying? Basically just going to put on a front so she didn't act like she did her job. And with the lack of communication with the mother of my son that's present, she [called] her numerous of times and couldn't get no call back or nothing because when I called, it was only certain times that I can call. You know what I'm saying? And it cost me money to call. So I needed for me to call the mother of my, the mother of my son to have her communicate with her through that.
>
>      Now I can't say what she had going on but, you know, she is a lawyer. ***
>
>      So lack of communication. I feel that she's not even trying to help me out with the guilty plea or see what we could do about this sentencing and put me in a better position and get a reasonable amount of time. You know what I'm saying?
>
>      So basically, that's why I feel like it's ineffective. There is a lack of communication. I don't feel that she even did what she could have done better than. You know what I'm saying? So I feel that she didn't do the best, best of her abilities, period. That's why I tried to fire her. She was basically trying to make me, basically trying to convince me of taking a plea when I didn't want to take it. And after that, I felt that she just basically did her job to, a certain amount of ***, Judge, to get me to trial. But I

8

personally feel that she just didn't just because she no choice but to represent me when you denied my oral motion and her withdrawal motion."

Attorney Korando did not dispute or contest the defendant's statements to the court.

¶ 25    In response, the court indicated that the allegation of ineffective assistance of counsel would be considered as an element of the defendant's motion for a new trial. The court stated that although it had no formal motion from the defendant alleging ineffective assistance of counsel, it allowed the defendant to speak at the hearing. The court noted that it heard and considered the defendant's position. The trial court concluded that it saw no merit in the defendant's ineffective assistance of counsel claim, stating: "Most of the matters pertain or the matters pertain to trial preparation and trial strategy, that there is no factual basis for any claim for ineffective assistance of counsel, as I see it ***."

¶ 26    The trial court found that there was no basis to appoint a new attorney for the defendant to investigate a claim for ineffective assistance of counsel. The court denied attorney Korando's motion to withdraw. The court also denied the defendant's motion for a new trial both as to ineffective assistance and as to the defendant's claim that the State had not proven his guilt beyond a reasonable doubt.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, the defendant raises two related issues about his appointed attorney and his claim that she provided ineffective assistance. The defendant alleges that the trial court's *Krankel* hearing, conducted after he alleged that trial counsel was ineffective, was inadequate. See *People v. Krankel*, 102 Ill. 2d 181, 189 (1984). The defendant also asserts that the trial court should have appointed separate counsel to pursue his claim that his trial counsel was ineffective, and that the trial court's denial of his motion for a new trial on that basis was manifestly erroneous.

¶ 29    After a defendant files a *pro se* ineffective assistance of counsel claim, the court is required to adequately inquire into the factual basis of the claim and under certain circumstances appoint new counsel to argue the claim on the defendant's behalf. *Id.* at 187-89. The supreme court in *People v. Moore* set out three ways the court may conduct an adequate inquiry: (1) the court may question trial counsel regarding the facts and circumstances surrounding the claim, (2) the court may briefly discuss the claim with defendant, or (3) the court may base its evaluation on its objective assessment of defense counsel's trial performance and on the sufficiency or insufficiency of the defendant's claims. *People v. Moore*, 207 Ill. 2d 68, 78-79 (2003). A defendant is not automatically entitled to the appointment of new counsel; whether the court should appoint new counsel depends upon the outcome of the court's preliminary evaluation. *Id.* at 77. If, after conducting the inquiry, the court determines that the claim lacks merit or pertains only to matters of trial strategy, the court need not appoint new counsel and may deny the *pro se* motion. *Id.* at 78. If, however, the allegations show possible neglect, new counsel should be appointed to represent the defendant's claims. *Id.*

¶ 30    The purpose of holding a *Krankel* hearing is to provide the trial court with an adequate opportunity to fully consider a defendant's ineffective assistance claims. *People v. Ayers*, 2017 IL 120071, ¶ 21 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 29). A *Krankel* hearing can serve to limit issues raised on appeal. *Id.* Moreover, evaluation of a defendant's claim in a *Krankel* hearing assists the trial court in creating a record for appeal. *Id.* (quoting *Jolly*, 2014 IL 117142, ¶ 38). The supreme court further explained the basis for a preliminary inquiry as follows:

> "The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim. In this way, the circuit court will have the necessary information to determine whether new counsel should be appointed to argue the claim of ineffective assistance of counsel. A defendant need only bring his claim to the court's attention, posttrial, whether orally or in writing." *Id.* ¶ 24.

10

To trigger a *Krankel* inquiry, a defendant must, at a minimum, state: "(1) he has a complaint about trial proceedings and (2) that complaint involves something his attorney did or failed to do." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 69.

¶ 31     Here, the defendant did not file a *pro se* posttrial motion alleging that his trial counsel was ineffective. Instead, trial counsel filed his posttrial motion and alleged: (1) that the defendant asked the court to allow him to discharge counsel on February 7, 2018; (2) that on March 1, 2018, counsel filed a motion to withdraw, and the trial court denied the motion; (3) that the trial court should have granted counsel's motion to withdraw; and (4) that "trial counsel's representation constituted ineffective assistance of counsel." We do not know whether the defendant told counsel to file his claim of ineffective assistance, or if counsel did so to provide foundational support for her posttrial motion to withdraw. Regardless, the allegation was not a *pro se* allegation. As the supreme court stated in *People v. Bates*:

> "[T]he trial court is required to inquire into counsel's effectiveness only upon a clear claim of ineffective assistance by a *pro se* defendant or by an attorney at the defendant's direction. Thus, an attorney can raise the issue of his own ineffectiveness only if he does so clearly and at the direction of the defendant. He must also alert the court that he is raising the claim at the defendant's direction." *People v. Bates*, 2019 IL 124143, ¶ 33.

The defendant did not file a written *pro se* motion alleging ineffective assistance of trial counsel. The defendant did not have an attorney file a posttrial motion alleging ineffective assistance of trial counsel. Nothing in the record on appeal reflects that appointed counsel raised her own "ineffective assistance" at the defendant's request. Further, appointed counsel did not alert the trial court that she was raising the claim at the defendant's express direction. From the record on appeal, we do not believe appointed counsel's inclusion of an ineffective assistance claim in the posttrial motion triggered the court's duty to hold a *Krankel* hearing.

11

¶ 32    However, while the record lacks conclusive evidence that the defendant directed appointed counsel to claim ineffective assistance, the defendant verbally informed the trial court at his posttrial motion hearing that appointed counsel had been ineffective. As noted earlier, "[a] defendant need only bring his claim to the court's attention, posttrial, whether orally or in writing." *Ayers*, 2017 IL 120071, ¶ 24. We believe that although there was no specificity included with the defendant's statement to the trial court that his trial counsel was ineffective, that verbal communication was sufficient to trigger the necessity of a *Krankel* hearing.

¶ 33    The defendant argues that the trial court's *Krankel* hearing was insufficient and asks this court to remand for a new hearing. The State contends that the trial court satisfied the *Krankel* hearing requirements. Whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 24.

¶ 34    As stated earlier in this order, when the defendant raises an ineffective assistance claim at a posttrial hearing, the "trial court must conduct an adequate inquiry ***, that is, inquiry sufficient to determine the factual basis of the claim." *People v. Banks*, 237 Ill. 2d 154, 213 (2010) (citing *People v. Johnson*, 159 Ill. 2d 97, 124 (1994)). If the court concludes that the claim is meritless or involves trial strategy, then the court may deny the *pro se* claim. *Jolly*, 2014 IL 117142, ¶ 29 (quoting *Moore*, 207 Ill. 2d at 78). "Where a trial court's inquiry into the defendant's allegations reveals that they are conclusory, misleading, or legally immaterial, and thus do not present a colorable claim of ineffective assistance of counsel, the court need not conduct further inquiry into the allegations." *People v. Serio*, 357 Ill. App. 3d 806, 817 (2005).

¶ 35    The *Krankel* hearing affords a defendant the opportunity to explain and support his claim. *Ayres*, 2017 IL 120071, ¶ 24. The trial court may ask trial counsel about the defendant's

allegations. *Jolly*, 2014 IL 117142, ¶ 30. The court may also choose to discuss these allegations with the defendant. *Id.* Finally, the trial court is permitted to make its determination based on its knowledge of trial court's representation during trial coupled with the insufficiency of the defendant's allegations. *Id.*

¶ 36　To properly analyze the adequacy of the trial court's *Krankel* hearing in this case, we must review the trial court's statement and ruling on the posttrial motions. The court stated:

> "The Court dealt with many of these issues leading up to the trial and specifically on Mr. Wise's oral motion to discharge Miss Korando approximately one week prior to the jury trial setting. And then Miss Korando followed that up at the Court's instruction with a written motion to withdraw as counsel. Had several hearings regarding those issues, and the Court talked to Mr. Wise. *** I encourage[d] you to discuss and participate in your defense and in that end part was the basis of Miss Korando filing that motion, her attempts to meet and discuss the case and prepare for trial with you, and your refusal to do that and meet and participate in your defense. We discussed all of that on the record leading up to the trial.

> Ultimately the Court ruled on both of those. [The Court] [d]enied the motion to discharge Miss Korando, the oral motion, and denied her [written] motion for leave to withdraw leading up to the trial. I think the Court indicated at that time that there was no, nothing to indicate to the Court that this wouldn't happen again if we were proceeding toward trial and that bad behavior or lack of participation wouldn't be rewarded by allowing an attorney to withdraw the week before trial, when we were first or second up at that point in time in the trial order.

> That was the Court's ruling at that point in time. We proceeded [to] the trial and a conviction or a guilty verdict was returned by the jury on a single count after a multiple day trial in which Miss Korando did represent you in the case, Mr. Wise.
> * * *
> The court's heard and considered your position in the situation, heard from you on your, what you're stating potentially might be ineffective assistance of counsel claim, which, because of that, leads to Miss Korando's motion to withdraw and part of the motion for a new trial.

> I've heard what you've indicated to me. Many of those were addressed in the previous motions to dismiss and motion to discharge her. At this point in time, I'm going to find that I do not see any merit to the claim for ineffective assistance of counsel at this point in time. Most of the matters pertain or the matters pertain to trial preparation and trial strategy, that there is no factual basis for any claim for ineffective assistance of counsel, as I see it, as we sit here, today.

13

I understand there's disagreements between attorney and clients. I also understand that clients need to participate in their defense. We've ruled on those motions previously. I don't see anything in this Court's mind necessitating a new attorney to be appointed for you to investigate a claim for ineffective assistance of counsel at this point in time based upon my review of the situation, questioning you here today, and your statements to this Court."

¶ 37　The central issue in examining the sufficiency of a *Krankel* hearing is the adequacy of the trial court's inquiry. An adequate inquiry may include "(1) questioning the trial counsel, (2) questioning the defendant, [or] (3) relying on its own knowledge of the trial counsel's performance in the trial." *People v. Peacock*, 359 Ill. App. 3d 326, 339 (2005). The Illinois Supreme Court has not specifically defined the meaning of the term "adequate" in the context of a *Krankel* hearing. We believe that the term is designed to be flexible and provides trial courts with the necessary discretion to tailor a *Krankel* hearing to the individualized situations presented. At its core, the adequacy of the hearing is connected to the defendant's opportunity to explain his or her claims of ineffective assistance. *Ayres*, 2017 IL 120071, ¶ 24.

¶ 38　From pretrial hearings, the trial court was familiar with the defendant and some of his concerns. At the *Krankel* hearing, the trial court asked the defendant if there was anything that he wanted to say about his attorney's representation. The defendant made extensive claims that involved pretrial matters—not returning telephone calls, advising the defendant to take a plea deal, and lack of communication. The trial court provided the defendant with "an opportunity to explain and support his claim." The defendant used this opportunity and vehemently expressed his concerns. Although his initial statement about counsel's ineffectiveness was conclusory, he provided several factual examples when he addressed the court. We conclude that the trial court provided an adequate and reasonable opportunity for the defendant to assert his claims, and further conclude that the court's denial of his posttrial motion was appropriate under these unique factual circumstances.

14

¶ 39     We also find that the allegations made by the defendant were facially insufficient. *Moore*, 207 Ill. 2d at 78-79. Any recommendations Korando made to the defendant about pleading guilty were strategic in nature. *Id.* at 78. Communication issues were a big component of the defendant's allegations. However, despite his complaints, Korando stated on the record that she had met with the defendant at the jail more than 10 times. We agree with the trial court's assessment that these communication issues did not provide a sufficient and cognizable claim of ineffective assistance. *Id.* at 78-79. The defendant also made generic complaints about counsel not having his "best interest" and not trying hard enough during trial because she "wanted him to plead guilty." We find that the court's conclusion and denial of the defendant's motion that counsel was ineffective was based in part on the court's evaluation and objective assessment of Korando's trial performance. *Id.*

¶ 40     The defendant urges this court to follow the guidance of the appellate court in *People v. Morgan* regarding the adequacy of the trial court's inquiry. We decline to do so. In *Morgan*, the defendant provided some specificity about his ineffective assistance claim during the context of his fitness evaluation. *People v. Morgan*, 2017 IL App (2d) 150463, ¶ 18. During the fitness hearing, the defendant stated that he did not believe that counsel had his best interest in mind. *Id.* ¶ 8. The court asked if the defendant had any specific complaints and the defendant stated that counsel was not trying to get him a lesser sentence offer. *Id.* The court denied the defendant's motion to discharge his attorney. *Id.* On appeal, the appellate court concluded that the trial court did not provide an adequate inquiry into the factual basis of the defendant's claim. *Id.* ¶ 18. The appellate court remanded the case for a further hearing, noting that the court "did not ask defendant about his discussions with counsel or how counsel failed to obtain a lower sentence. Nor did it ask counsel any questions about defendant's claim." *Id.*

15

¶ 41    We find that this case is factually distinguishable from *Morgan*. In *Morgan*, the trial court concluded that counsel was not ineffective based upon the court's knowledge of counsel's performance. *Id.* The appellate court noted that the *Krankel* hearing was during a pretrial fitness hearing and thus the trial court's assessment of counsel's efficacy was based upon matters outside of the record and outside of the court's presence in that case. In this case, the *Krankel* hearing took place at a posttrial hearing. The judge at the posttrial hearing was the same judge present throughout the trial and had the ability to observe the attorney's performance.

¶ 42    We conclude that the trial court provided an adequate *Krankel* hearing. We find that the defendant's claims were insufficient or involved matters of sound trial strategy, and that the trial court's decision was based in part upon defense counsel's trial performance. *Moore*, 207 Ill. 2d at 78.

¶ 43    The defendant also argues that the trial court erred by not appointing new counsel to represent him on his claims of ineffective assistance of counsel. "*Krankel*, however, did not establish a *per se* rule that all *pro se* motions for a new trial alleging the ineffective assistance of counsel must result in the appointment of new counsel." *People v. Crane*, 145 Ill. 2d 520, 533 (1991). A trial court's decision not to appoint new counsel following an adequate inquiry into the defendant's claims "shall not be overturned on appeal unless the decision is manifestly erroneous." *People v. McCarter*, 385 Ill. App. 3d 919, 941 (2008). A trial court's decision is not considered to be manifestly erroneous if the underlying claim is found to be meritless or related to trial strategy. *Crane*, 145 Ill. 2d at 533 (citing *People v. Jackson*, 131 Ill. App. 3d 128, 139 (1985)).

¶ 44    We find that the trial court correctly found that the defendant's claims were meritless or based on strategy. The defendant claims that Korando was advising and/or pressuring him to

16

plead guilty. Given the strength of the evidence in this case, we believe that Korando was wise to provide advice and guidance about the benefits of pleading guilty. The defendant had the ability to reject counsel's advice and he did so, stating that, "I fired her." This recommendation was a matter of legal professionalism based upon the strength of the State's case, and was not, therefore, ineffective assistance. The defendant also complained about communication, but as we noted, Korando met with the defendant more than 10 times. She attempted to communicate with him additional times, but he refused to speak with her because she had suggested the possibility of a guilty plea. Further, we note that Korando was available by telephone, but not always at the precise times when the defendant attempted to reach her. Although the defendant wanted his attorney to speak with the mother of his son, there is no obligation for an attorney to do so. Moreover, the priority and privilege of communications between an attorney and her client are paramount. The defendant also complained that Korando failed to tell the defendant, the State, and the court that she would be out of town for a posttrial hearing date. He argues that her failure to notify him "constitutes a failure to prepare or strategize at all." We do not believe that Korando's failure to appear on one date necessarily equates to a failure to prepare for a future hearing date. Finally, the defendant alleges that Korando did not assist him in preparation for sentencing. The record reflects that this is not accurate. Korando argued numerous mitigation factors and provided ample supportive documentation to the court in urging the trial court to consider a lesser sentence. We conclude that Korando was not ineffective, and that the trial court's decision not to appoint new counsel for defendant was proper under these circumstances.

¶ 45                                    III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the Jackson County circuit court's denial of the defendant's posttrial motion. We affirm the defendant's conviction and sentence.

17

¶ 47    Affirmed.