NOTICE

Decision filed 11/20/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230097-U

NO. 5-23-0097

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 17-CF-316 |
| | ) | |
| BRYAN D. WISE II, | ) | Honorable |
| | ) | Michael A. Fiello, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1  *Held*: The circuit court properly dismissed defendant's postconviction petition where the issues raised were either inappropriate for such a petition, had been decided on direct appeal and were thus *res judicata*, or could have been raised there and were thus forfeited. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2  Defendant, Bryan D. Wise II, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the circuit court erred. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion and this court has provided him ample opportunity to file a response. However, he

1

has not done so. After considering the record on appeal, OSAD's memorandum, and its supporting brief, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4        Defendant was charged with aggravated battery with a firearm. His initial counsel withdrew due to a conflict of interest. Shortly before trial, his new counsel moved to withdraw, citing a breakdown in communication. Counsel alleged that she had tried to meet with defendant several times but he refused to speak with her. Counsel argued that she would be ready for trial if defendant would meet with her and discuss the case.

¶ 5        Defendant complained that counsel only came to talk to him on the days he was scheduled to appear in court, so he felt that he did not have time to properly prepare. He also stated that counsel told him that, "if I go to trial, that she 100 percent guaranteed I was going to get convicted." Defendant did not believe counsel should be guaranteeing her clients that they would lose.

¶ 6        The court explained defendant's rights, including the right to an attorney, and opined that speaking with his attorney about his trial was a smart idea. Defendant again explained that he did not feel comfortable going to trial with his current counsel because he did not believe that she had his best interests at heart. When asked to respond, counsel said she had met with defendant more than 10 times at the county jail.

¶ 7        The court denied the motion to withdraw. Defendant asked if the court was going to force him to go to trial with an attorney he did not trust. The court responded that he did not have to like the attorney appointed for him.

¶ 8 At trial, the victim, Arthur Morgan testified that defendant was his nephew. Morgan was known by his middle name, Louis. He lived in Nashville, Tennessee, where he had been employed by United Parcel Service for more than 30 years.

¶ 9 The week before the incident, Morgan returned to his native Carbondale for a funeral and to visit his mother. During that time, Morgan also saw defendant, who went to Morgan's mother's house to ask for money. Morgan said that this was not unusual, and that he had given defendant money more than five times. He gave defendant $70.

¶ 10 During the following week, Morgan and defendant spoke once by telephone and continued the conversation via text messages. Defendant wanted a vehicle owned by Morgan's mother. Morgan agreed with defendant that his mother, who was 82 years old, should no longer be driving, but he told him that whether to sell the vehicle was up to her. Defendant also wanted Morgan's mother to cosign a vehicle loan for him. Morgan's mother, however, did not want to do so. The conversations became increasingly antagonistic, "[t]o the point of me getting threatened and my mom getting threatened, our lives." Specifically, he said "next time I come home that he would kill me and my mother."

¶ 11 Morgan returned to Carbondale for the Independence Day weekend. Late that evening, he was sitting on the tailgate of his truck smoking when he heard defendant call "Uncle Louis." He recognized defendant's voice, as he had known him all his life.

¶ 12 When he turned toward the voice, he recognized defendant, who began shooting at him. Defendant fired several shots, one of which hit Morgan in the shoulder. He felt the bullet go through and exit out his back. The bullet broke a bone and severed an artery. He was eventually transferred to Barnes-Jewish Hospital in St. Louis to repair the damaged artery.

¶ 13    Morgan said that he was familiar with guns from his time in the military and was absolutely certain that defendant had a gun. He identified photos of his truck showing gouges that he believed were made by a bullet. On cross-examination, he acknowledged that he never actually saw defendant with a gun, but he saw the muzzle flash and felt the bullet penetrate his arm. Rebecca Mooney of the Carbondale Police Department examined defendant's truck and, based on her experience in investigating shooting cases, concluded that the gouges were made by bullets.

¶ 14    Investigating officers did not find any bullets or shell casings at the scene but testified that this was not unusual in shooting cases. After the incident, Morgan gave officer Jennifer Brooke Lam permission to go through his cell phone. She sent a search warrant to Verizon Wireless to ascertain who was associated with the phone number that originated the text messages to Morgan. She learned that the messages originated from defendant's phone. Verizon produced the messages, which were consistent with those that Morgan received.

¶ 15    Defendant presented no evidence. The jury found him guilty.

¶ 16    Prior to sentencing, defense counsel again moved to withdraw, citing defendant's motion for a new trial alleging that counsel was ineffective. She believed that different counsel should argue the motion.

¶ 17    The court observed that defendant had not previously made an ineffective-assistance claim. The court noted that it had approved several motions to continue and held two hearings on counsel's previous motion to withdraw. The court allowed defendant to explain why he believed the court should grant counsel's motion to withdraw. Defendant complained that counsel consistently urged him to take an open guilty plea. He argued that counsel often failed to return his calls. This was compounded by the facts that he could only call at certain times of day, and that the calls cost him money. Defendant believed that counsel did not defend him to the best of

4

her abilities because she pressured him to take a guilty plea, did not properly communicate with him, and generally acted like she was only defending him because the trial court would not grant her initial motion to withdraw.

¶ 18    The court denied the motion, again noting that no formal motion alleging ineffective assistance of counsel was filed.  The court considered the issue, however, as an element of the motion for a new trial.  The court noted that defendant refused to discuss his case with counsel when she tried to meet with him prior to trial, stating that "bad behavior or lack of participation wouldn't be rewarded by allowing an attorney to withdraw the week before trial, when we were first or second up at that point in time in the trial order."  Finding that no new issues had been brought since the initial motion to withdraw, the court rejected defendant's posttrial ineffective assistance of counsel claim.  The court specifically found that defendant's complaints about counsel pertained only to trial preparation and strategy.

¶ 19    Following a hearing, the court sentenced defendant to 23 years' imprisonment.  On direct appeal, defendant argued that the trial court did not conduct an adequate *Krankel* hearing.  See *People v. Krankel*, 102 Ill. 2d 181 (1984).  We disagreed, finding that the court gave defendant a sufficient opportunity to explain his claims and rightly concluded that they involved strategic matters or "communication" issues that did not hamper counsel's representation.  *People v. Wise*, 2021 IL App (5th) 180358-U, ¶¶ 42, 44.  The supreme court denied leave to appeal.

¶ 20    On November 3, 2022, defendant filed a postconviction petition.  He raised seven claims: (1) the trial court erred in denying defense counsel's motion to withdraw; (2) counsel was ineffective for not investigating Morgan's cellphone, texts, and emails; (3) counsel was ineffective for the "failure to file cumulative motions" to suppress "circumstantial evidence" of threats from defendant; (4) he was not proved guilty beyond a reasonable doubt; (5) we denied him due process

5

on direct appeal by affirming the trial court's failure to appoint independent counsel; (6) we erred in finding that Morgan identified defendant where the State's evidence was circumstantial; and (7) we erred with regard to his ineffective-assistance claim.

¶ 21 On November 28, 2022, the court dismissed the petition, finding that its claims were either not constitutional violations—and thus not appropriate for a postconviction petition—were decided on direct appeal and thus *res judicata*, or could have been raised on direct appeal, but were not, and thus forfeited. We allowed defendant to file a late notice of appeal.

¶ 22 ANALYSIS

¶ 23 OSAD concludes that there is no reasonably meritorious argument that the court erred in dismissing the petition. We agree.

¶ 24 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. *Id.* § 122-1(a); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). Proceedings under the Act are collateral. *People v. Edwards*, 2012 IL 111711, ¶ 21. As a result, issues that were decided on direct appeal or in previous collateral proceedings are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)). The Act requires that a petitioner either provide "affidavits, records, or other evidence" to support his or her allegations or explain their absence. 725 ILCS 5/122-2 (West 2020).

¶ 25 With these standards in mind, we examine defendant's individual claims. His first claim, that the court erred in denying counsel leave to withdraw, was raised and decided on direct appeal. Thus, it is barred by *res judicata*. *Pitsonbarger*, 205 Ill. 2d at 458.

6

¶ 26    Defendant's second and third claims allege ineffective assistance of counsel.  Although defendant was afforded an adequate *Krankel* hearing, he raised neither of these claims there.  Nor did he raise them on direct appeal.  Thus, they are forfeited.  *Blair*, 215 Ill. 2d at 443-44.

¶ 27    Moreover, the claims fail for another reason: they are merely general allegations, devoid of specifics.  " 'To establish that a defendant was deprived of effective assistance of counsel, a defendant must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).  To establish the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

¶ 28    Here, defendant's vague allegations fall far short of establishing either that counsel's performance was deficient or how more or different actions by counsel would likely have changed the result of the trial.  Defendant does not give a hint as to what an investigation of Morgan's cellphone might have revealed.  Moreover, defendant does not suggest a basis for suppressing evidence.  Morgan consented to the police going through his phone and they secured a warrant to obtain information from Verizon. Thus, a basis for suppressing evidence is not apparent from the record.  Accordingly, defendant has not established that counsel's representation fell below an objective standard or that any such failure prejudiced him.

¶ 29    Defendant contended in the petition that such niceties were not required because counsel labored under a conflict of interest.  Defendant appears to confuse "conflict of interest" with a general personality conflict such as apparently occurred here.  As defendant acknowledged in the petition, a conflict of interest is typically found only where the conflict arises from a "commitment to others," not where a conflict arises in another fashion.  *People v. Gardner*, 47 Ill. App. 3d 529,

7

533 (1977). Courts have sometimes found a conflict of interest based on allegations of incompetence, but not "where the alleged incompetence constituted nothing more than a disagreement between counsel and the defendant on the choice of trial tactics." (Internal quotation marks omitted.) *People v. Carroll*, 260 Ill. App. 3d 319, 338-39 (1992).

¶ 30    To hold otherwise

"would become a spawning ground for frivolous appeals and supply a reason for defendants not to fully cooperate with court-appointed counsel. Whenever a difference of opinion regarding possible trial tactics or defenses might arise between a defendant and his attorney, such a rule would promote noncooperation and disputes over the smallest differences of opinion. Furthermore, such a rule would instigate the filing of groundless complaints with the Attorney Registration and Disciplinary Commission whenever a defendant became dissatisfied with the performance of his attorney in order to assure a reliable mode of reversal should conviction result from the trial." *Gardner*, 47 Ill. App. 3d at 534.

¶ 31    We held on direct appeal that defendant's disputes with trial counsel resulted from just such disagreements about trial tactics. *Wise*, 2021 IL App (5th) 180358-U, ¶¶ 42, 44. Thus, he has not established a conflict of interest.

¶ 32    Defendant's fourth contention is that he was not proved guilty beyond a reasonable doubt. The purpose of a postconviction proceeding is to allow inquiry into constitutional issues that were not, and could not have been, decided on direct appeal. *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 45 (citing *People v. Barrow*, 195 Ill. 2d 506, 519 (2001)). Accordingly, it is well-settled that reasonable doubt of a defendant's guilt is not a proper issue for a postconviction proceeding. *Id.* (citing *People v. Frank*, 48 Ill. 2d 500, 504 (1971)).

8

¶ 33 Defendant did not question on direct appeal the sufficiency of the evidence and does not contend that appellate counsel was ineffective for failing to raise the issue. In any event, such a claim would be bound to fail.

¶ 34 When a defendant challenges on appeal the sufficiency of the evidence, we ask only whether, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We apply this standard regardless of whether the evidence is direct or circumstantial. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). Circumstantial evidence meeting this standard is sufficient to sustain a conviction. *Id.*

¶ 35 Here, defendant was identified by Morgan, his uncle, who had known defendant all his life. While Morgan could not testify about specific details, such as defendant's clothing, this was not necessary. A witness need not distinguish individual and separate features of a suspect in making an identification. *People v. Slim*, 127 Ill. 2d 302, 308-09 (1989). Instead, a positive identification is sufficient even if the witness gives only a general description based on the total impression of the accused's appearance. *Id.*

¶ 36 Defendant's petition made much of the fact that no one saw defendant with a gun. Morgan, who was familiar with guns from his time in the military, conceded that he never actually saw a gun in defendant's possession. However, he saw the muzzle flash and felt the bullet go through his body. Both Morgan and Mooney identified gouges in defendant's truck that they opined were caused by a bullet.

¶ 37 Courts have generally upheld convictions based on eyewitness testimony that the defendant had a gun where details about the gun were sparse or even where the witness never actually saw

it. See *People v. Toy*, 407 Ill. App. 3d 272, 289 (2011) (finding the evidence sufficient where a victim testified that the defendant verbally threatened to kill her when he pressed what she believed to be a gun against her head); *People v. Wright*, 2015 IL App (1st) 123496, ¶¶ 75-76 (rejecting argument that because the witnesses only viewed the handle of the firearm, their testimony was insufficient to show the item was a firearm); see generally *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 15 (citing cases). Moreover, no evidence suggested that defendant possessed anything other than a firearm. See *Jackson*, 2016 IL App (1st) 141448, ¶ 16. We are aware of no other device that can propel a bullet with sufficient force to pass completely through a grown man's body, breaking a bone in the process, and damage a truck in the manner described. Thus, there was sufficient evidence for the jury to conclude that defendant fired a gun.

¶ 38    Defendant's final three contentions, while difficult to summarize, all relate to our decision on direct appeal. As noted, a postconviction proceeding's purpose is to allow inquiry into constitutional issues that were not, and could not have been, decided on direct appeal. *Dixon*, 2022 IL App (1st) 200162, ¶ 45. It is not meant to allow the relitigation of issues previously decided. Accordingly, issues that were decided on direct appeal are barred by *res judicata*. *Pitsonbarger*, 205 Ill. 2d at 458. Thus, issues covered in our previous decision are barred.

¶ 39    In an apparent attempt to avoid this result, defendant baldly asserts that our prior decision deprived him of due process. He was afforded an appeal, assisted by counsel, in which we decided the issues on the merits. His mere disagreement with our earlier decision does not somehow convert the issue into a constitutional one involving due process.

¶ 40    Defendant contended that we misstated the evidence in the earlier decision. He maintained that we stated that Morgan was threatened (*Wise*, 2021 IL App (5th) 180358-U, ¶ 13) whereas defendant's actual email to Morgan did not contain an explicit threat.

10

¶ 41     After Morgan testified about his conversations with defendant about his mother's car and a possible car loan, he was asked the following questions and gave the following answers:

"Q. Was it an antagonistic conversation?

A. Yes, it was.

Q. Did that increase?

A. Yes, it did.

Q. How so?

A. To the point of me getting threatened and my mom getting threatened, our lives."

Thus, we accurately stated Morgan's testimony, to which defendant did not object.

¶ 42     Defendant apparently refers to a message from defendant that Morgan read on direct examination:

" 'And if you feel any type of way about what I told you last night, the next time you in Carbondale call my phone and I'll pull up on you. Like I said, f*** you, f*** your mama and you. Hope you all both die soon and go back to this, what I said clearly says f*** your mama, you and you. Hope both of you all die soon, but now you know what it is.' "

¶ 43     While the precise meaning of "pull up on you" is obscure, defendant's reference to locating Morgan the next time he was in Carbondale combined with the "hope" that both Morgan and his mother would die soon was sufficient that Morgan reasonably construed it as a threat. Defendant apparently believes that his phrasing was sufficiently clever to distance himself from the threat. However, his belated and self-serving attempt to parse his words does not cast doubt on the accuracy of our prior decision.

11

¶ 44                                    CONCLUSION

¶ 45    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and

affirm the circuit court's judgment.


¶ 46    Motion granted; judgment affirmed.